BUTLER, In re. See Cases Nos. 9,418 and 10,-650.

## Case No. 2,237.

### BUTLER v. The ARROW.

[6 McLean, 470;[1] Newb. Adm. 59.]

Circuit Court, D. Michigan. June Term, 1855.

DOCUMENTARY EVIDENCE—PART OF RECEIPT—EXPLANATION BY PAROL.

1. When a receipt is introduced as evidence of the contract of affreightment, the whole document is in proof; and one part cannot be separated from the other in its judicial interpretation.

2. After the voyage had been completed, the clerk of a steamer sailing between Sandusky, Ohio, and Chatham, Canada, touching at Detroit and other intermediate ports, gives the following receipt to the owner of a horse lost between Detroit and Chatham. "Received of T. B., three dollars for transporting horse from Sandusky to Chatham. One dollar for the steamer Ploughboy, and two dollars for the steamer Arrow. The horse (by consent,) transferred to the Ploughboy, October 30, 1852." Part evidence admitted to explain the receipt.

[See Heckscher v. Binney, Case No. 6,316; Rabaud v. De Wolf, Id. 11,519, affirmed in 1 Pet. (26 U. S.) 476; Crane v. Morris, 6 Pet. (31 U. S.) 598; Friedman v. Goodman, Case No. 5,119.]

[In admiralty. Libel by Thomas Butler against the steamboat Arrow for the loss of a horse delivered for carriage. Libel dismissed.]

H. K. Clark, for libellant.
Jas. V. Campbell, for respondent.

WILKINS, District Judge. The libellant alleges, that on the 30th of October, 1852, he

shipped by the Arrow from Sandusky, Ohio, his horse, for the village of Chatham, in the province of Canada West, for the sum of $3,00 then paid. That the steamer, then lying at Sandusky, through her Captain, then and there contracted with libellant to deliver the said horse to one John Davis at said village of Chatham, and that the said horse was never so conveyed or delivered.

The answer of the owner, fully denies this allegation, and the contract as exhibited and further shows, "That the steamboat was employed at the time alleged in running between Sandusky and Detroit, and no other route and no further than Detroit, and that the same was then well known to libellant. That the libellant at the time alleged, applied to the clerk of the steamer to receive on board a horse to be carried to Detroit, and there to be delivered to steamboat Ploughboy, (a boat running from Detroit to Chatham), to be conveyed to Chatham. That the clerk of the Arrow agreed to receive said horse, convey him to Detroit, and there deliver him to said steamer Ploughboy, to be conveyed to Chatham. That the said libellant paid to the clerk, the sum of two dollars, for the transportation of the horse to Detroit, and also the further sum of one dollar to be paid to the Ploughboy, for conveying the horse from Detroit to Chatham. That the said horse was conveyed to Detroit on the steamer Arrow, and by the mate thereof, placed on the Ploughboy shortly after her arrival at the wharf, and the one dollar paid for the transportation to Chatham as directed."

The libellant claims the value of the horse which was lost from the Ploughboy. The only proof brought to support the exhibits of the libel, is a receipt by the clerk of the Arrow, given to the libellant, after the voyage had been completed by the Arrow, and she had returned to Sandusky. That receipt reads as follows. "Received of Thomas Butler, $3,00, for transporting horse from Sandusky to Chatham, $1,00, for the Ploughboy, and $2,00 for the Arrow; the horse by consent was put aboard the Ploughboy, October 30th, 1852." This proof by no means establishes the contract of affreightment as exhibited in the libel. The contract set forth, was that the Arrow was to deliver the horse to one John Davis at Chatham. But here, part of the consideration is specified as being paid to another boat, and a statement that the horse was delivered to such other boat. The whole document and not a part, is in proof, and the one part cannot be separated from the other, in its judicial interpretation. Without explanation it is ambiguous, the three dollars for the transportation to Chatham is subsequently divided between two vessels, and without proof that they ran in connection, this receipt would not be satisfactory to charge the Arrow, especially from the answer of the owner, which corresponds with the document, and with its

[1] [Reported by Hon. John McLean, Circuit Justice.]

4 FED. CAS.—57

closing declaration that "the horse was put on board the Ploughboy."

Without impinging upon the rule, then, that a written instrument cannot be modified by parol proof, we are necessarily compelled here to resort to the proof furnished by the claimant of the Arrow, and this completely sustains the defense. 1st. That the agreement was to deliver the horse at Detroit, and to the steamer Ploughboy, for conveyance to Chatham; and that such agreement was fully performed. 2d. That the route of the Arrow at the time of the alleged contract, terminated at Detroit, and that this was known to libellant. 3d. That the clerk of the Arrow, did not receive the whole consideration for the whole route as compensation for the Arrow, but only two dollars for the Arrow, and agreed to act as the agent of the libellant in paying the other dollar to the Ploughboy. 4th. That the Arrow under the circumstances is not answerable for the loss of the horse, sustained in consequence of the neglect of the Ploughboy. Libel dismissed.

---

BUTLER (BIRCH v.). See Case No. 1,425.

BUTLER (BRITTON v.). See Cases Nos. 1,903 and 1,904.

BUTLER (BROADWELL v.). See Case No. 1,910.

BUTLER (BUTTON v.). See Case No. 1,903.